UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

FREDERIC PATTON                                              CIVIL ACTION

VERSUS

AIR PRODUCTS AND CHEMICALS, INC.,
ET AL.                                                       NO. 22-00392-BAJ-RLB

RULING AND ORDER

This is a personal injury case. Plaintiff alleges that due to Defendants Air Products and Chemicals, Inc. (APC) and BrandSafway, LLC's negligence, he suffered serious injuries when he fell from a scaffolding structure at work. (*See* Doc. 1-3).

Now before the Court is Plaintiff's **Motion For Summary Judgment On Defendants' Affirmative Defenses (Doc. 43)**, seeking summary judgment on APC's first, fourth, and fifth affirmative defenses and BrandSafway's fourth, sixteenth, twentieth, and twenty-third affirmative defenses. The Motion is opposed. (Docs. 69, 72). Also before the Court is Plaintiff's **Motion To Strike Defendants' Affirmative Defenses (Doc. 45)**, seeking to strike APC's third, sixth, and seventh affirmative defenses and BrandSafway's first, second, third, sixth, ninth, eleventh, thirteenth, seventeenth, eighteenth, nineteenth, twenty-first and twenty-second affirmative defenses.[1] The Motion is opposed. (Docs. 61, 71). For the reasons that follow, Plaintiff's Motion for Summary Judgment will be granted in part and his

---

[1] Plaintiff also moves to strike Defendant Air Products, LLC's sixth affirmative defense. Air Products, LLC has been dismissed from this lawsuit, and Plaintiff's Motion to Strike will therefore be denied as moot with respect to this defense. (Doc. 81).

Motion to Strike will be denied as untimely.

I.  **BACKGROUND**

   A. **Summary Judgment Evidence**

The facts set forth below are drawn from Plaintiff's Statement Of Uncontested Material Facts (Doc. 43-2, "Plaintiff SOF"), APC's Response to Plaintiff's Statement of Uncontested Facts (Doc. 86, "APC SOF"), BrandSafway's Response to Plaintiff's Statement Of Uncontested Material Facts (Doc. 78, "BrandSafway SOF"), the parties' Joint Pre-Trial Order (Doc. 87, "Joint PTO"), and the record evidence submitted in support of these pleadings.

   i.  **APC Hires BrandSafway**

APC is the owner and operator of an air processing facility within the Nova Chemicals Corporation facility in Geismar, Louisiana. (Joint PTO at 4). Every three years, the APC facility conducts a "turnaround," which involves maintenance and review of its equipment. (*Id.*; Plaintiff SOF at ¶ 2). During the planning process for the 2020 turnaround, APC decided it would need scaffolding structures to facilitate work on elevated equipment. (Plaintiff SOF at ¶ 5).

To fill its scaffolding needs, APC hired BrandSafway as a scaffolding contractor. (*Id.* at ¶ 6, 10). The two entities entered into a Master Service Agreement (MSA). (*Id.* at ¶ 11). The MSA required BrandSafway to comply with APC's safety procedures and site-specific safety requirements. (*Id.* at ¶ 20). APC also conducted a walkthrough of the worksite with BrandSafway representatives. (Plaintiff SOF at ¶ 19).

Pursuant to the MSA, APC issued a purchase order for each job APC asked BrandSafway to perform. (*Id.* at ¶ 11). The purchase order for the turnaround scaffolding work called upon BrandSafway to build the scaffolding, offer "scaffold support," "[m]obilize personnel, equipment and material," "[p]rovide inspections and updates for ten shifts," and "[d]e-mobilize personnel, equipment and material." (Doc. 43-8 at 2). The purchase order set forth additional APC requirements, including specifications for safety training, background checks, and personal protective equipment. (*Id.* at 3–6).

As part of the agreed-to safety procedures, BrandSafway was required to inspect scaffolding before it was used each day. (BrandSafway SOF at ¶ 12). After each such inspection, a BrandSafway scaffold builder signed and documented the date of the inspection on a tag displayed on the scaffolding structure. (Plaintiff SOF at ¶ 31; BrandSafway SOF at ¶ 13). During shifts, unauthorized modification of BrandSafway scaffolding sometimes occurred, although the parties dispute how often. (*See* Plaintiff SOF at ¶ 32; BrandSafway SOF at ¶ 14; APC at ¶ 32).

### ii. APC's Safety Work Permit System

During a turnaround, APC issues each contractor a daily Safety Work Permit to work inside APC's facility. (Doc. 69 at 2–3; Plaintiff SOF at ¶ 23). The work permit system is described in APC training material as a "communication, hazard risk assessment, and safety tool which provides cooperation between operations and maintenance/contractors on specific work inside the plant." (Doc. 54-8 at 1). The Safety Work Permit "must be issued by [APC] for any work in [turnaround] areas"

and "must be reviewed by the worker, crew leader, issuer, and any other appropriate [APC] representative." (*Id.* at 2).

In order to obtain a Safety Work Permit each day, APC requires that a contractor "perform a pre-job risk assessment as well as a careful and thorough review" of the issued permit. (*Id.*). Contractors are instructed to "understand the time limits, work restrictions and limitations, notification requirements, overall scope of work, associated potential hazards, how to safeguard against those hazards . . . and required personal protective equipment." (*Id.*). Furthermore, "[e]ach contractor [has] a designated [APC] host." (*Id.*).

Before issuing a work permit each day, "the permit issuer and permit receiver (contractor) must [walk] the job site, review the work scope, [and] discuss and understand the hazards." (*Id.*). After issuing a permit, APC materials state that "a hard copy of the permit MUST be posted and visually displayed in the area where work is being conducted. Each person on the work team MUST be made aware of the safety information contained on the permit." (*Id.*). Above all, APC's materials repeatedly urge that "NO work shall be done in a [turnaround] area without the issuance of the appropriate permit by [APC] personnel." (*Id.*).

### iii. Plaintiff's Role and the Fall Incident

As part of the 2020 turnaround, APC hired another contractor, JVIC Catalyst Services, LLC to replace catalyst filtration material. (Plaintiff SOF at ¶ 15). At the time, Plaintiff was employed by JVIC as a Catalyst Technician. (Doc. 43-1 at 8; PTO at 4). To fulfill their duties, JVIC employees, including Plaintiff, worked from a

4

scaffolding structure built by BrandSafway. (Plaintiff SOF at ¶ 16). Each day before a shift, after BrandSafway's inspection, an APC employee would walk that scaffold with the JVIC superintendent and issue a safety work permit to JVIC to begin work. (APC SOF at ¶ 34).

While working on the scaffolding, Plaintiff wore a "fall protection vest and lanyard, as required by [APC]." (Doc. 43-1 at 9). As part of his fall protection procedure, Plaintiff secured himself by clipping onto anchor points on the scaffolding. (*See* Doc. 69 at 3).

On September 29, 2020, Plaintiff was part of a JVIC crew working from a BrandSafway scaffold to unload and reload catalyst filtration material. (PTO at 4). On that day, the inspection tag on the scaffolding in question was signed and dated by a BrandSafway scaffold builder, as it had been "at least eight times prior to the subject accident." (BrandSafway SOF at ¶ 13). The BrandSafway crew generally reported to the facility at 6:00 a.m., attended a safety meeting, and began their scaffold inspections around 6:40 a.m. (APC SOF at 6). No evidence suggests the morning of September 29 did not unfold in the same way. When Plaintiff's JVIC coworkers finished unloading catalyst filtration material around noon, Plaintiff went up onto the scaffold to inspect the bottom of the unit. (*Id.*). At some point while Plaintiff was there, the rail to which Plaintiff was anchored fell from the scaffold, causing Plaintiff to fall between seven and ten feet, resulting in injuries to his head, shoulder, and back. (*See* Docs. 43-1 at 9; 69 at 7; 72 at 2).

5

## B. Procedural History

On September 29, 2021, Plaintiff sued Defendants APC, BrandSafway, and Air Products, LLC in the 19th Judicial District Court for the Parish of East Baton Rouge, State of Louisiana, seeking damages for injuries allegedly sustained in his fall from the scaffolding. (*See* Doc. 1-2). On June 15, 2022, Defendants APC and Air Products, LLC removed Plaintiff's action, invoking this Court's diversity jurisdiction under 28 U.S.C. § 1332. (Doc. 1). On November 30, 2023, pursuant to a stipulation of dismissal filed by all parties, Defendant Air Products, LLC was dismissed with prejudice from the lawsuit. (Doc. 81).

Now, Plaintiff moves for summary judgment on APC's first, fourth, and fifth affirmative defenses and BrandSafway's fourth, sixteenth, twentieth, and twenty-third affirmative defenses. (Doc. 43). The Motion is opposed. (Docs. 69, 72).

Plaintiff also moves to strike APC's third, sixth, and seventh affirmative defenses and BrandSafway's first, second, third, sixth, ninth, eleventh, thirteenth, seventeenth, eighteenth, nineteenth, twenty-first and twenty-second affirmative defenses. (Doc. 45). The Motion is opposed. (Doc. 61, 71).

## II. LAW AND ANALYSIS

### A. Plaintiff's Motion for Summary Judgment

#### i. Standard

Federal Rule of Civil Procedure 56(a) provides that the Court may grant summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R.

6

Civ. P. 56(a). If the movant bears its burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). "Where the record taken as a whole could not lead a rational trier of fact to find for the non-moving party, there is no 'genuine issue for trial.'" *Id.* at 587. Stated differently, "[i]f the party with the burden of proof cannot produce any summary judgment evidence on an essential element of [her] claim, summary judgment is required." *Geiserman v. MacDonald*, 893 F.2d 787, 793 (5th Cir. 1990).

### ii. Discussion

Plaintiff moves for summary judgment on APC's first, fourth, and fifth affirmative defenses and BrandSafway's fourth, sixteenth, twentieth, and twenty-third affirmative defenses. (Doc. 43). APC opposes Plaintiff's Motion only with respect to its first and fifth affirmative defenses. (Doc. 69). BrandSafway opposes Plaintiff's Motion only with respect to its fourth affirmative defense. (Doc. 72). Failure to address a claim in response to a party's summary judgment motion constitutes abandonment of the claim. *See Vela v. City of Houston,* 276 F.3d 659, 678–79 (5th Cir. 2001). Accordingly, the Court finds no issue of material fact as to APC's fourth and BrandSafway's sixteenth, twentieth, and twenty-third affirmative defenses, and will grant Plaintiff's Motion as to those defenses. The Court now turns to the remaining defenses.

### a. APC's First and BrandSafway's Fourth Affirmative Defenses

In his Petition for Damages, Plaintiff alleges that Defendants' actions or omissions are the sole cause of his injuries and damages and constitute fault and negligence under Louisiana Civil Code Article 2315. (Doc. 1-2 ¶ 7). APC's first and BrandSafway's fourth affirmative defenses each allege instead that Plaintiff is partly or wholly responsible for his injuries because he failed to properly inspect his anchor point on the BrandSafway scaffolding. (*See* Doc 43-1 at 11, 15).

To prove a negligence claim under Louisiana law, Plaintiff must establish: (1) that the Defendants had a duty to conform their conduct to a specific standard, (2) that Defendants' conduct failed to conform to the appropriate standard, (3) that Defendants' substandard conduct was a cause in fact of Plaintiff's injuries (4) that Defendants' substandard conduct was a legal cause of Plaintiff's injuries, and (5) actual damages.[2] *Audler v. CBC Innovis Inc.*, 519 F.3d 239, 249 (5th Cir. 2008).

In Louisiana, comparative fault applies "in any action for damages" brought "under any law or legal doctrine or theory of liability." La. Civ. Code art. 2323. Comparative fault means that "100% of the causative fault for a harm must be allocated" and "each joint tortfeasor is only liable for his degree of fault." *Thompson v. Winn-Dixie Montgomery, Inc.*, 2015-0477 (La. 10/14/15), 181 So. 3d 656,

---

[2] "This Court sitting in diversity pursuant to 28 U.S.C. Section 1332 must apply Louisiana law." *Jorge-Chavelas v. Louisiana Farm Bureau Cas. Ins. Co.*, 307 F. Supp. 3d 535, 552 (M.D. La. 2018), *aff'd,* 917 F.3d 847 (5th Cir. 2019).

664. Louisiana's pure comparative fault system renders summary judgment inappropriate where reasonable minds could disagree about the apportionment of fault. *McCoy v. Energy XXI COM, L.L.C.*, 695 F. App'x 750, 756 (5th Cir. 2017) (*citing Allen v. Integrated Health Servs., Inc.*, 743 So.2d 804, 807 (La. Ct. App. 1999) ("Because we conclude that reasonable minds might differ as to the apportionment of fault under these circumstances, we hereby reverse the trial court's grant of partial summary judgment which assessed the defendants with all the fault for the accident.")); *Grabowski v. Smith & Nephew, Inc.*, 149 So.3d 899, 908 (La. Ct. App. 2014), *writ denied*, 159 So.3d 1057 (La. 2015) (reversing the grant of summary judgment in favor of a medical sales representative defendant because the summary judgment record revealed a genuine dispute as to a material fact as to whether he was potentially at fault).

Here, Defendants APC and BrandSafway sufficiently allege material disputes of fact as to whether they are, as Plaintiff contends, wholly at fault for his injuries. In his Motion, Plaintiff states that the "evidence shows that at all times [he] followed [APC's] rules and properly tied off his fall protection equipment, as required." (Doc. 43-1 at 12). This is simply not the case.

For instance, Owen Hilton, JVIC's Senior Safety Corporate Safety Manager, testified that Plaintiff's training included inspecting the anchor point before beginning work on a scaffold. (*See* Docs. 69 at 11; 72 at 4). In apparent violation of this training, Plaintiff testified in his deposition that he did not perform any visual inspection of the anchor point before attaching himself to it. (*See* Docs. 69 at 10–11;

72 at 5). But Plaintiff also testified that he believed he was only required to read the inspection tag on the scaffolding and was not also required to check each anchor point before connecting himself to it. (Doc. 69 at 11). This conflicting testimony about Plaintiff's duty to protect himself represents precisely the kind of dispute that defeats summary judgment. *See Matsushita*, 475 U.S. at 586.

BrandSafway takes the dispute one step further, arguing that Plaintiff's Motion does not address the potential fault of non-parties. (Doc. 72 at 9). BrandSafway states that Plaintiff's employer, JVIC, was responsible for ensuring that Plaintiff was properly trained. (BrandSafway SOF at ¶ 19). To the extent Plaintiff did not receive proper training, BrandSafway argues that JVIC itself may be at fault. (Doc. 72 at 10). BrandSafway also points to the evidence suggesting workers may have made unauthorized alterations to the anchor point used by Plaintiff. (*Id.*). The jury must be allowed to consider the fault of these unnamed parties as well. *See Slocum v. Anderson*, No. CV 17-01781-BAJ-EWD, 2020 WL 738542, *2 (M.D. La. Feb. 13, 2020) ("Louisiana's pure comparative fault scheme requires the Court to consider whether any other parties could also be liable for Plaintiff's injuries."). In sum, Defendants have raised material fact disputes regarding whether fault for Plaintiff's injuries can be fully apportioned to APC and BrandSafway.

### b. APC's Fifth Affirmative Defense

In its fifth affirmative defense, APC alleges that it "discharged any and all duties owed [Plaintiff]" when it contracted with BrandSafway "to construct and

10

inspect the scaffolding to be used in the September 2020 Turnaround." (Doc. 69 at 15). Now, Plaintiff argues that summary judgment is appropriate on this defense because APC maintained "custody or garde" over the job site—and therefore its duty to plaintiff—under two theories of negligence in Louisiana law: custodian liability, La. Civ. Code art. 2317.1, and premises liability, La. Civ. Code art. 2322. (Doc. 43-1 at 12–13). APC responds that Plaintiff did not plead these specific theories of liability, and so the Court's analysis of Plaintiff's Motion should be limited to one of standard negligence under La. Civ. Code art. 2315. (Doc. 69 at 14). The Court agrees.

It is well settled that a plaintiff is not "permitted to rely on an unpled theory of recovery to defeat summary judgment." *Allstate Ins. Co. v. Plambeck*, 2012 WL 2130982, at *3 (N.D. Tex. 2012) (refusing to consider a theory of recovery raised by counterclaimant in opposition to summary judgment). Because Plaintiff did not plead either custodian or premises theories of liability, the Court will not allow the Plaintiff to amend his Petition via summary judgment. *See U.S. ex rel. DeKort v. Integrated Coast Guard Sys.*, 475 F. App'x 521, 522 (5th Cir. 2012) (concluding district court did not err in denying DeKort's motion for partial summary judgment because he attempted to raise a new claim"). Significantly, Plaintiff does not respond to Defendant's argument. "The Fifth Circuit makes it clear that when a party does not address an issue in his brief to the district court, that failure constitutes a waiver on appeal." *JMCB, LLC v. Bd. of Com. & Indus.*, 336 F. Supp. 3d 620, 634 (M.D. La. 2018) (*citing United States v. Reagan*, 596 F.3d 251, 254–55 (5th Cir. 2010) (deGravelles, J.) (defendant's failure to offer any "arguments or explanation ... is a

11

failure to brief and constitutes waiver")). "By analogy, failure to brief an argument in the district court waives that argument in that court." *Id.*; *see also Kellam v. Servs.*, No. 12-352, 2013 WL 12093753, at *3 (N.D. Tex. May 31, 2013), *aff'd sub nom. Kellam v. Metrocare Servs.*, 560 F. App'x 360 (5th Cir. 2014) ("Generally, the failure to respond to arguments constitutes abandonment or waiver of the issue." (citations omitted)). For these reasons, the Court's analysis of Plaintiff's Motion will be limited to standard negligence under La. Civ. Code art. 2315.

Under that law, a principal cannot be held liable for the injuries resulting from the negligent acts of an independent contractor—like BrandSafway—unless "the principal retains operational control over the contractor's acts or expressly or impliedly authorizes those acts." *Whittine v. Anadarko Petroleum Corp.*, No. CV 16-15761, 2018 WL 2183888, at *3 (E.D. La. May 11, 2018) (*citing Coulter v. Texaco, Inc.*, 117 F.3d 909, 912 (5th Cir. 1997) (internal quotations omitted)) (Brown, C.J.). "[I]t is not enough that [the principal] has merely a general right to order the work stopped or resumed, to inspect its progress or to receive reports, to make suggestions or recommendations which need not necessarily be followed, or to prescribe alterations or deviations. . . . There must be such a retention of right of supervision that the contractor is not entirely free to do the work in his own way." *Hebert v. CXY Energy, Inc.*, 72 F. Supp. 2d 681, 687–88 (W.D. La. 1999) (*quoting LeJeune v. Shell Oil Co.*, 950 F.2d 267, 270 (5th Cir. 1992)). Whether APC owed a duty to Plaintiff is a question of law, but whether APC maintained operational control over its subcontractors, including BrandSafway and JVIC, is a question of fact. *Whittine*,

2018 WL 2183888, at *3 (*citing Fruge ex rel. Fruge v. Parker Drilling Co.*, 337 F.3d 558, 564 (5th Cir. 2003)).

Here, a fact issue remains as to whether APC retained control over the scaffolding and its contractors such that APC retained its duty to Plaintiff. On one hand, BrandSafway was "solely responsible for construction and inspection of the scaffold . . . as [BrandSafway] was [the] only company that employed certified scaffold inspectors." (Doc. 69 at 15). Decisions regarding selection of scaffolding material and construction were "solely within the discretion of BrandSafway." (*Id.*). These facts support a finding that APC did not maintain operational control and did not have a duty to Plaintiff. On the other hand, it can hardly be said that BrandSafway was "entirely free to do the work in [its] own way." *LeJeune*, 950 F.2d at 270. Recall that APC used a daily permitting system for any contractor to do work. (Doc. 54-8 at 2). These Safety Work Permits were to be "issued by [APC] for any work in [turnaround] areas" and had to be "reviewed by the worker, crew leader, issuer, and any other appropriate [APC] representative." (*Id.*). "Each contractor [had] a designated [APC] host." (*Id.*). Before signing on a work permit, "the permit issuer and permit receiver (contractor) . . . walked down the job site, review[ed] the work scope, [and] discuss[ed] and underst[ood] the hazards." (*Id.*). APC rules stated that "a hard copy of the permit MUST be posted and visually displayed in the work area. Each person on the work team MUST be made aware of the safety information contained on the permit." (*Id.*). Above all, APC's materials repeatedly urged that "NO work shall be done in a [turnaround] area without the issuance of the appropriate permit by [APC]

personnel." (*Id.*). These undisputed facts support a finding that APC retained operational control over BrandSafway's scaffolding and therefore had not completely discharged its duty to Plaintiff. In sum, APC has pointed to disputed issues of material fact regarding whether it may assert a discharge of duty defense against Plaintiff's negligence claim. A jury must decide whether APC maintained control over operations such that it had a duty to Plaintiff.

### B. Plaintiff's Motion to Strike Defendants' Affirmative Defenses

Plaintiff moves to strike APC's third and seventh affirmative defenses and BrandSafway's first, second, third, sixth, ninth, eleventh, thirteenth, seventeenth, eighteenth, nineteenth, twenty-first and twenty-second affirmative defenses. (Doc. 45). APC opposes Plaintiff's Motion with respect to its third affirmative defense, (Doc. 61), and BrandSafway opposes Plaintiff's Motion with respect to its second, seventeenth, twenty-first and twenty-second affirmative defenses, (Doc. 71).

Under Rule 12(f) of the Federal Rules of Civil Procedure, a court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." "A motion to strike defenses should not be granted unless the moving party demonstrates that denial of the motion would be prejudicial to the moving party." *Alba-Cruz v. Ard*, 2017 WL 2362010, at *2 (M.D. La. May 31, 2017). Prejudice is a discretionary determination and one that this Court has held to a high standard. *See K&F Restaurant Holdings, Ltd. v. Rouse*, No. 16-293, 2018 WL 3345294 (M.D. La. July 9, 2018) (deGravelles, J.) (finding that the plaintiffs' allegations that

14

the defendants bribed plaintiffs' employee and stole their secret recipes, which were disseminated through newspaper articles, were not prejudicial).

Here, the Court need not reach the merits of Plaintiff's request to strike, because the request itself is untimely. According to Rule 12(f)(2), "[t]he court may act . . . on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading." Because Defendants' affirmative defenses were presented in their Answers, Plaintiff had 21 days from the docketing of the Answers to file his Motion to Strike. Here, the most recent Answer to Plaintiff's petition was filed on April 14, 2022.[3] Plaintiff did not file his Motion to Strike until October 30, 2023, more than one year after Defendants' affirmative defenses were asserted. Plaintiff's request, therefore, is untimely. *See McCoy v. SC Tiger Manor, LLC*, No. CV 19-723-JWD-SDJ, 2022 WL 619922, at *3 (M.D. La. Feb. 11, 2022), *report and recommendation adopted*, No. CV 19-723-JWD-SDJ, 2022 WL 619966 (M.D. La. Mar. 2, 2022) (denying plaintiff's motion to strike as untimely); *see Williams v. Crowe*, No. 09-6440, 2011 WL 381806, at *1 (E.D. La. Feb. 2, 2011) ("[B]ecause plaintiff did not file her motion to strike within 21 days after being served with defendants' answers, plaintiff's motion to strike is denied as untimely").

---

[3] BrandSafway filed its answer on November 3, 2021. (Doc. 54-14). Now-dismissed Defendant Air Products, LLC filed its answer on November 16, 2021. (Doc. 54-13). APC filed its answer on April 14, 2022. (Doc. 61-5).

Rule 12(f) also states that the Court may act "on its own" to strike a defense. *See McCoy*, 2022 WL 619922, at *4. As Defendants represent in their responses that they do not oppose Plaintiff's Motion to Strike with respect to APC's seventh affirmative defense and BrandSafway's first, third, sixth, ninth, eleventh, thirteenth, eighteenth, and nineteenth affirmative defenses, the Court strikes these defenses "on its own." Fed. R. Civ. Proc. 12(f).

### III. CONCLUSION

Accordingly,

**IT IS ORDERED** that Plaintiff's Motion for Summary Judgment (Doc. 43) be and is hereby **GRANTED IN PART**. Summary judgment is granted on Defendant Air Products and Chemicals, Inc.'s fourth affirmative defense and Defendant BrandSafway's sixteenth, twentieth, and twenty-third affirmative defenses. In all other respects, Plaintiff's Motion for Summary Judgment be and is hereby **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Strike (Doc. 45) be and is hereby **DENIED** as untimely. To the extent Plaintiff seeks to strike the affirmative defense of now-dismissed Defendant Air Products, LLC, Plaintiff's Motion to Strike be and is hereby **DENIED** as moot.

**IT IS FURTHER ORDERED** that Defendant APC's seventh affirmative defense and Defendant BrandSafway's first, third, sixth, ninth, eleventh, thirteenth, eighteenth, and nineteenth affirmative defenses be and are hereby **STRICKEN** on

the Court's *sua sponte* motion.

Baton Rouge, Louisiana, this 11th day of January, 2024

_____
**JUDGE BRIAN A. JACKSON
UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF LOUISIANA**